2015 PA Super 70

| | |
|---|---|
| IN RE: P.Z., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: M.L., FATHER, | |
| Appellant | No. 1507 WDA 2014 |

Appeal from the Order August 19, 2014
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): TPR 20 OF 2014

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

OPINION BY BOWES, J.:                                    **FILED APRIL 10, 2015**

M.L. ("Father") appeals from the order terminating his parental rights to his minor child, P.Z.  We affirm.

P.Z. was born in Pittsburgh, Pennsylvania, during February 2012.  He has never been in the care of either parent.  At birth, M.Z. ("Mother") tested positive for methadone and marijuana.[1]  P.Z. also had methadone in his system and displayed withdrawal symptoms for approximately two months. Upon discharge from the hospital, P.Z. was transferred to the Children's Home.  Allegheny County Children Youth and Family ("CYF") obtained emergency custody of P.Z. during April 2012, and the juvenile court

---

*  Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the parental rights of the birth mother.  She did not appeal that order.

adjudicated him dependent the following month. When P.Z. was three-months old, the juvenile court placed him in his current, pre-adoptive foster home.

Father resides in Arizona, the state where P.Z. was conceived. When Mother returned to Pennsylvania to give birth, Father remained in Arizona. CYF contacted Father during May 2012. Father requested custody and visitation with his son and stated that he would commence the required measures in Arizona to facilitate that contact. Father not only failed to initiate those processes, but he also neglected to participate in the adjudication of his son's dependency. Nevertheless, since P.Z.'s original permanency goal was reunification, CYF developed a Family Service Plan ("FSP") for Father and advised him of his enumerated goals, including, *inter alia*, to execute a confirmation of paternity, meet the child's basic financial demands, address domestic violence, understand and address P.Z.'s developmental and physical delays, obtain housing, and cooperate with CYF and service providers.

Although Father proclaimed his certainty of P.Z.'s lineage, he failed to execute an acknowledgement of paternity at the outset of the dependency proceedings. Instead, Father waited until September 2012, when he obtained the results of a court-ordered paternity test confirming his genetic relationship with P.Z. Over the next twenty-one months, CYF exhausted substantial resources in order to reunify P.Z. with Father, including providing Father with bus fare from Arizona on one occasion and airfare and hotel

accommodations for at least three other five-day visitations with P.Z. Nonetheless, Father's compliance with the FSP goals was minimal. He ignored the requests of the caseworker assigned to the case in Arizona in order to determine if his home was a suitable placement option, and he did not execute documents, submit his fingerprints for a criminal background check, or complete the necessary in-home visits. Likewise, Father failed to satisfy the parenting component of the FSP and it remains unclear whether the anger management course that he completed satisfied his goal relating to domestic violence.

In the meantime, during July 2013, Neil C. Rosenblum, Ph.D., the court-appointed evaluator, performed the first of three interactional evaluations between P.Z. and his pre-adoptive foster mother. Dr. Rosenblum concluded that, in light of the fact that P.Z. was near the zenith of the attachment process with the foster mother and mindful of the excellent care that she provided the child since May 2012, the recommended disposition of the dependency proceedings was adoption. Following the August 2013 permanency review hearing, during which the juvenile court noted Father's continued lack of progress toward reunification, the juvenile court directed CYF to file a petition to terminate Father's parental rights. Instead, CYF initiated a "permanency round table," *i.e.*, an internal audit including top CYF officials, supervisors and caseworkers, as well as

representatives from the Alliance For Infants and Toddlers and The Annie E. Casey Foundation.[2]  *See* N.T., 6/25/13, at 212-213.  The result of the internal audit was to increase CYF's reunification efforts despite the juvenile court's order and Father's documented failures.  Accordingly, CYF declined to file the petition for termination at that juncture.

CYF did not file the underlying petition to terminate parental rights until February 7, 2014, six months after the juvenile court's initial directive and upon the court's additional findings of minimal progress by Father and reiterations of its instruction to the agency.  Three months after the agency complied with the juvenile court's edict to file the petition to terminate Father's parental rights, CYF attempted to withdraw the petition, and when that was fruitless, it filed a motion for a continuance seeking to postpone the hearing pending its continued reunification efforts.[3]

Thereafter, at the outset of the evidentiary hearing, the trial court addressed another motion to withdraw that had been filed by CYF the

_____

[2] Malika Mason, the CYF caseworker assigned to this family, identified "the Casey Foundation [as] a large organization [that] provides funding to the [Department of Children and Families] offices throughout the country.  They do assessments of our cases [and] determine [whether] we are . . . on the right track[.]"  N.T., 6/25/14, at 213.  We presume that the 'Casey Foundation' that Ms. Mason referred to was, in fact, The Annie E. Casey Foundation.

[3] The trial court did not specifically address CYF's May 8, 2014 motion to withdraw.  Instead, as noted in the body of this opinion, the court denied a subsequent, yet identical, motion to withdraw that CYF filed on the eve of the evidentiary hearing.

previous day. CYF and Father's counsel argued in favor of withdrawing the petition to terminate Father's parental rights. The guardian *ad litem* opposed the motion for withdrawal. Following argument, the trial court denied CYF's motion and immediately commenced the evidentiary hearing. Specifically, the court concluded,

[T]he Court having listened to arguments of all counsel, finds persuasive that the Adoption and Safe Families Act,[4] which requires the state to file a [p]etition for TPR [(termination of parental rights)] unless one of the three exceptions [was] in fact applicable to this case, finds that the Motion to Withdraw the Petition is denied. That the Adoption and Safe Families Act could not possibly have meant that the state's filing should be a *pro forma* filing, and in fact[,] a filing would assume that the state would proceed on a TPR.

_____

[4] In 1988, our legislature amended the Juvenile Act, 42 Pa.C.S. §§ 6301-6375, to conform to the federal Adoption and Safe Families Act ("ASFA"), 42 U.S.C. § 671-679. In *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (emphasis added), our Supreme Court outlined the relevant aspects of the statutes as follows:

ASFA was enacted to combat the problem of foster care drift, where children . . . are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons. *See* 42 Pa.C.S. § 6301(b)(1); 42 Pa.C.S. § 6351(f)(9) (**requiring courts to determine whether an agency has filed a termination of parental rights petition if the child has been in placement for fifteen of the last twenty-two months**).

N.T., 6/25/14, at 18.

Thus, having just sought to withdraw its petition to terminate Father's parental rights, CYF dutifully presented testimony from Dr. Rosenblum and the family's caseworker and then rested its case. The trial court then continued the hearing until July 21, 2014. When the parties reconvened, Father confirmed that CYF had rested its case-in-chief and then moved for dismissal due to the agency's failure to establish the statutory grounds for termination under 23 Pa.C.S § 2511(a). CYF indicated that it did not object to the dismissal of the case on those grounds; however, the guardian *ad litem* argued that the agency had, in fact, presented clear and convincing evidence to support terminating Father's parental rights. Additionally, the guardian *ad litem* noted that the court had not permitted her to present any witnesses on the matter. After an extended argument concerning CYF's burden of proof, the guardian *ad litem's* singular responsibility to represent P.Z.'s best interest, Father's rights, and the quantum of evidence that CYF had adduced at that juncture, the trial court denied Father's motion to dismiss. Following additional testimony by Father's and the guardian *ad litem*'s witnesses and a subsequent proceeding concerning an unavailable witness, the trial court entered the above captioned order terminating

Father's parental rights to P.Z. pursuant to § 2511(a)(2), (5), and (8) and § 2511(b). Father filed a timely appeal.[5]

Father complied with Pa.R.A.P. 1925(a)(2)(i) by filing a concise statement of errors complained of on appeal concomitant with his notice of appeal. The Rule 1925(b) statement raised five issues, which Father reiterates on appeal as follows:

> I. The [t]rial [c]ourt erred and/or abused its discretion in moving forward with the Petition to involuntarily terminate the parental rights of [Father] when the [c]ounty sought to withdraw its [p]etition because the county did not feel that involuntarily terminating the parental rights of [Father] would best serve the needs and welfare of the minor child P.Z.;
>
> II. The [t]rial [c]ourt erred and/or abused its discretion in denying Appellant's Motion to Dismiss the Petition to Involuntarily Terminate the Parental rights of [Father] at the close of [CYF's] [c]ase in [c]hief;
>
> III. The [t]rial [c]ourt erred and/or abused its discretion in finding that [CYF] met [its] burden of proof by clear and convincing evidence that the parental rights of [Father] should be terminated pursuant to 23 Pa.C.S.A. [§] 2511(a) (2), (5),(8);
>
> IV. The [t]rial [c]ourt erred and/or abused its discretion in finding that [CYF] met [its] burden of proof by clear and convincing evidence that [it] provided reasonable services to

---

[5] CYF declined to appeal the order terminating Father's parental rights or challenge the court's decision to deny its motion to withdraw the petition. Indeed, by the end of the termination hearing, the agency argued in favor of the termination of parental rights. *See* N.T., 8/13/14, at 19 ("[A]fter review of the record, the agency is now seeking termination of the parental rights of [Father] pursuant to Sections 2511[(a)(2), (5) and (8)], and section B, believing that grounds do exist to terminate [Father's] parental rights.").

[Father] sufficient to timely reunify [Father] with his minor child P.Z.;

V. The [t]rial [c]ourt erred and/or abused its discretion in finding that [CYF] met their burden of proof by clear and convincing evidence that terminating the parental rights of [Father] would best meet the needs and welfare of P.Z. pursuant to 23 Pa.C.S.A. [§] 2511 (b)[.]

Father's brief at 1-2.

While Father presents five distinct issues in his statement of questions presented, the argument section of his brief reduced those issues into three arguments, two of which are redundant.[6] First, Father assails CYF's effort in providing him services toward reunification and complains that the trial court erred in denying the agency's motions to withdraw the petition on this basis. Next, Father challenges the sufficiency of the evidence that CYF adduced to establish the statutory grounds to terminate Father's parental rights. As a sub-issue, Father argues that the court erred in denying his motion to dismiss the case at the close of the agency's case-in-chief. Finally, reiterating his initial argument, Father posits that considering his indigent status and responsibilities in Arizona, the court erred in finding that CYF

_____

[6] Father's brief abandons the argument that terminating his parental rights would not serve P.Z.'s needs and welfare pursuant to 23 Pa.C.S § 2511(b). Thus, we need not address that claim. Nevertheless, as noted in the body of this opinion, we confront P.Z.'s needs and welfare in addressing whether CYF established the statutory grounds to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8), and we confirm that terminating Father's parental rights best satisfies P.Z.'s developmental, physical, and emotional needs and welfare.

provided him reasonable services. We address Father's first and third issues collectively, and for the following reasons, we find no basis for relief.

At the outset, we observe that the trial court, guardian *ad litem*, and CYF all contest Father's ability to challenge the trial court's decision to deny CYF's motion to withdraw the petition. The focus of this collective position is that Father did not file the underlying motion to withdraw and CYF, the party that filed the pertinent motion, declined to appeal from the order terminating Father's parental rights. The trial court adds that, by the close of the evidentiary hearing, CYF altered its position and, in fact, argued in favor of termination. Thus, the court and both appellees argue that Father does not have standing to raise this argument on appeal.

We reject the bare claim that Father lacks standing on appeal to challenge the trial court's denial of the agency's motion to withdraw the petition. Notwithstanding the absence of any citation to legal authority in support of this collective position, we observe that, as the aggrieved party appealing a final order, Father can challenge all previous interlocutory orders. ***See Quinn v. Bupp***, 955 A.2d 1014, 1020 (Pa.Super. 2008) ("It is established that a notice of appeal filed from the entry of the final order in an action draws into question the propriety of any prior non-final orders."). More importantly, the record bears out that, contrary to the foregoing assertions, Father, in fact, "join[ed] in asking the petition be withdrawn." N.T., 6/25/14, at 4-5. In light of Father's explicit request, the fact that CYF declined to appeal the order terminating parental rights or argue that the

trial court erred in denying the motion to withdraw is irrelevant. Father joined the agency's motion to withdraw, that joint request for relief was denied, and Father now seeks to rectify what he perceives as the trial court's error. Hence, we address the merits of Father's argument.

The crux of Father's primary position is that, since CYF did not provide him the necessary services to achieve reunification, the juvenile court should not have applied a rote consideration of the ASFA timing mechanisms in denying the agency's motion to withdraw the petition to terminate parental rights. Father's position relies upon the portion of the internal audit wherein the agency determined that additional services were needed to reunify Father with P.Z. He adds that the circumstances of his life in Arizona and the seven-month delay in confirming paternity exacerbated CYF's deficiencies. Essentially, Father argues that he fit within a statutory exception to the Juvenile Act's time constraints outlined in § 6351(f)(9)(iii). We disagree.

Pursuant to §6351(f) of the Juvenile Act, "[a]t each permanency hearing, a court shall determine all of the following:

> (9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S. § 6351(f)(9)(i-iii).

The statute does not establish a litmus test that requires a juvenile court to alter the course of reunification due simply to the amount of time a child has been in placement. *See In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). It does, however, create a mechanism for keeping juvenile courts alert to the potential for foster care drift, *i.e.*, "where children [languish] in the foster care system while their parents unsuccessfully [attempt] to regain custody." *Id*. at 186. Thus, once a child's placement in foster care reaches the fifteen-month threshold, juvenile courts are mandated to query whether the agency has initiated proceedings to terminate parental rights. In *In re D.C.D.*, 105 A.3d 662, 674 (Pa. 2014), our Supreme Court highlighted the significance of § 9351(f)(9) as follows, "the statutory language ensures that termination petitions are timely filed. Specifically, if a child has been in custody for 15 of the last 22 months, the court must inquire as to whether a termination petition has been filed, absent the listed exceptions of subsections (i)-(iii), including whether the parents have been provided necessary services." The Court continued, "Requiring a court to inquire

whether an agency has filed for termination promotes timely permanency for children rather than subjecting them to foster care drift." *Id*. at 674-675.

Herein, following the August 26, 2013 permanency review hearing, the trial court entered an order in compliance with § 6351(f). The order found that Father had made minimal compliance with the permanency plan, minimal progress toward alleviating the circumstances that led to P.Z.'s original placement, and that, as of that date of the permanency hearing, P.Z. had been in placement for sixteen months. Accordingly, the juvenile court directed the agency to file a petition to terminate Father's parental rights pursuant to § 6351(f)(9). Significantly, there was no indication in that order that CYF either identified a compelling reason to forego the termination of rights at that juncture or declared that the family had not been provided sufficient reunification services. *See* CYF Exhibit 3 (Permanency Review Order, 8/26/13, at 1-2, 4). To the contrary, the trial court explicitly found that CYF used reasonable efforts toward finalizing the permanency plan goal of reunification. *Id*. at 1.

In denying CYF's motion to withdraw the involuntary termination petition, the trial court reasoned that it would be unreasonable to require the agency to file a petition for termination yet permit it to withdraw the petition absent one of the enumerated exceptions. As none of the exceptions was apparently applicable and since P.Z. had been in placement for twenty-seven months by that juncture, the court denied the agency's petition to withdraw.

We find no basis to disturb the trial court's determination. The certified record reveals that CYF expended substantial resources on its reunification efforts. The agency contacted Father in Arizona prior to the adjudication of dependency. N.T., 6/25/14, at 118. Father declined to participate in the adjudication hearing and failed to execute an acknowledgment of paternity. *Id*. at 135. He did not submit to the DNA test verifying P.Z.'s paternity until September of 2012, seven months later. *Id*. In the meantime, Father was not eligible to receive services. However, CYF continued to treat him as the putative father, developed FSP goals for him, and notified him of his goals by telephone and mail. *Id*. at 98, 136, 145. Additionally, CYF invited him to participate by telephone in permanency meetings. *Id*. at 136.

Once paternity was established, CYF referred Father to an Arizona child service agency under the Interstate Compact for the Placement of Children ("ICPC"), 62 PS § 761. The referral process required a home study, a criminal record check, and a social history interview. Without the interstate compact, Father could not have custody of P.Z. in Arizona and CYF could not refer Father to services out of state. N.T., 6/25/14, at 142. CYF submitted the ICPC documents to Arizona on January 10, 2013, and the Arizona agency denied ICPC referral the ensuing May. *Id*. at 141-142. One of the reasons that the Arizona agency rejected the ICPC request stemmed from the agency's determination that Father was unable to provide a safe and stable home. Additionally, Father did not complete the required

documentation process or fingerprinting requirements. He also failed the criminal background check component of the ICPC review.

Despite the foregoing defaults, which proved insurmountable for Father, CYF provided him transportation and hotel fare to meet with P.Z. The first meeting occurred during April 2013, when P.Z. was fourteen months old. *Id*. at 142-143. The agency also established roughly two months of online contact between Father and P.Z. via Skype; however, that contact terminated abruptly after Father broke his tablet and failed to inform CYF of his unavailability. *Id*. at 164-165. After the trial court ordered CYF to file a petition to terminate parental rights due to Father's demonstrated lack of initiative, the agency increased its reunification efforts. *Id*. 165-167. It delayed filing the petition for six months, and in the meantime, it provided Father extensive services, including airfare to Pittsburgh and accommodations to visit with P.Z. during November of 2013 and January, March, and April of 2014. *Id*. at 166, 169-171. CYF also reinitiated the Skype contacts in March 2014. *Id*. at 166. Additionally, based upon Father's ephemeral interest in relocating to Pittsburgh, the agency referred him to the Urban League and Holy Family for assistance in locating and obtaining housing. *Id*. at 176-177. However, as of the date of the termination proceedings six to eight months later, Father had yet to commit to relocating to Pittsburgh. *Id*. at 178.

The foregoing evidence supports the trial court's determination that CYF made reasonable efforts to promote reunification. Father's argument

that he was not provided with necessary services to achieve reunification within the fifteen-to-twenty-two-month time frame is meritless. Additionally, we observe that, contrary to Father's position, the trial court's denial of the petition to withdraw was not tantamount to an order terminating his parental rights. Indeed, CYF was still required to prove by clear and convincing evidence the statutory grounds for termination under 23 Pa.C.S. § 2511 (a) and (b). Accordingly, we reject Father's claim that the trial court erred in denying CYF's motion to withdraw the petition to terminate his parental rights.

Next, we encounter Father's contention that the trial court erred in denying his motion to dismiss CYF's petition at the close of the agency's case-in-chief. This issue has two components. First, Father argues that the court erred as a matter of law in concluding that it was required to consider evidence adduced by the guardian *ad litem* prior to ruling on the agency's motion. Second, Father argues that CYF did not present sufficient evidence to endure his challenge. For the reasons that follow, we conclude that the trial court did not commit an error of law and that CYF satisfied its burden of proving the statutory grounds for terminating parental rights.

Initially, we reject Father's assertion that the trial court denied his motion to dismiss based upon its inaccurate belief that it had to hear evidence from the guardian *ad litem* before assessing the petition. Indeed, in complete contrast to Father's assertion that the trial court permitted CYF to share its statutory burden of proof with the guardian *ad litem*, the record

- 15 -

makes clear that the trial court assessed the agency's evidence independently and concluded that the petition to terminate Father's parental rights was supported by clear and convincing evidence. Significantly, the court rendered its conclusion before Father or the guardian *ad litem* introduced any evidence in this case. After discussing the agency's burden of proof and the guardian *ad litem's* role in the termination proceedings, the trial court had the following exchange with Father's counsel:

> [Father's Counsel]: Your honor, I respectfully—I understand very well what the Court stated. However, again, it is not the [guardian *ad litem's*] petition, it is not the [guardian *ad litem's*] burden to prove by clear and convincing evidence, so that is the grounds and especially if the Court states that the Court did not find [CYF's] testimony credible—
>
> The Court: I am talking about the [CYF] caseworker. I did not find the [CYF] caseworker's testimony credible about her opinion about what she believes is the best interest of this child. I did not find her credible. But other than that, I believe that there are sufficient facts that [CYF] has proven based on the facts of this case and what has happened for [P.Z.] and what the father has done or failed to do, but **there is clear and convincing evidence right now**.

N.T., 7/21/14, at 10 (emphasis added).

As demonstrated by the foregoing excerpt, the record belies Father's argument that the trial court eased CYF's burden of proof or shifted part of it to the guardian *ad litem*. In reality, the trial court did not consider any evidence adduced by the guardian *ad litem* when it denied Father's motion to dismiss the termination proceedings. The court simply measured CYF's

evidence and examined the credibility of the two witnesses that it presented. Father's argument is meritless.

Finally, the record sustains the trial court's conclusion that CYF established the statutory grounds to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a) and (b). This Court reviews the determination of the trial court for an abuse of discretion. *In re D.C.D.* 105 A.3d 662, 670-671 (Pa. 2014) ("When reviewing a trial court's decision to grant or deny a termination of parental rights petition, an appellate court should apply an abuse of discretion standard, accepting the findings of fact and credibility determinations if they are supported by the record, and reversing only if the trial court made an error of law or abused its discretion."). This is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination. *In re A.S.*, 11 A.3d 473, 477 (Pa.Super. 2010). As noted, CYF has the burden of proving the statutory grounds for termination by clear and convincing evidence. *In re Adoption of L.J.B.*, 18 A.3d 1098 (Pa. 2011).

Requests to terminate the parental rights of a biological parent are governed by 23 Pa.C.S. § 2511(a) and (b). The statute provides in pertinent part,

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

- 17 -

(2)    The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5)      The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

(8)      The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The test for terminating parental rights consists of two parts. In *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007), we explained:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

Initially, we reject Father's preliminary contention that the trial court erred in considering Dr. Rosenblum's testimony in determining whether CYF adduced sufficient evidence to terminate parental rights. He maintains that Dr. Rosenblum only confronted P.Z.'s needs and welfare under § 2511(b) rather than the substantive allegations under § 2511(a). Father is mistaken. It is beyond argument that § 2511(a)(5) and (8) specifically require petitioners to establish that "termination of the parental rights would best serve the needs and welfare of the child." Likewise, since Dr. Rosenblum also addressed Father's parenting ability, finding Father's skills marginal, and opined that Father lacked capacity to parent P.Z., his testimony also was relevant in establishing the statutory grounds outlined in § 2511(a)(2), *i.e.*, "The repeated and continued incapacity, abuse, neglect or refusal of the

parent has caused the child to be without essential parental care." Thus, no relief is due.

Next, we review the merits of the court's decision to terminate parental rights. We need only agree with the court's decision as to one subsection of 23 Pa.C.S. § 2511(a) and the subsection (b) analysis in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Herein, the certified record supports the trial court's determination that CYF established the statutory grounds to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) and (b). Hence, we do not address the remaining statutory grounds.

We have explained our review of the evidence pursuant to § 2511(a)(8), as follows:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In Re Adoption of M.E.P.*, 825 A.2d 1266, 1275-1276 (Pa.Super. 2003). Thus, in order to satisfy the requirements of § 2511(a)(8) in the case at bar, CYF was required to produce clear and convincing evidence that: (1) P.Z. has been removed from Father for at least twelve months; (2) the conditions which led to the child's removal continue to exist; and (3) involuntary termination of parental rights would best serve P.Z.'s needs and welfare.

***See In re Adoption of R.J.S.***, 901 A.2d 502 (Pa.Super. 2006).

Herein, P.Z. was placed with CYF during April 2012, when the newborn displayed sustained symptoms from opiate withdrawal and Father was physically absent and unavailable to parent. The agency plainly satisfied the threshold requirement that the child be removed for at least twelve months. Furthermore, as it relates to the continued existence of the conditions that predicated P.Z.'s removal, the certified record demonstrates that Father remains unable to provide essential parental care. Likewise, the record establishes that terminating Father's parental rights would best serve P.Z.'s needs and welfare. Hence, for the reasons we discuss below, we sustain the trial court's conclusion that CYF satisfied its burden of proof.

During the evidentiary hearing, Dr. Rosenblum testified that between July 2013 and April 2014, he conducted two interactional evaluations between P.Z. and Father and performed one individual evaluation with Father.[7] N.T., 6/25/14, at 23. Additionally, over that period, Dr. Rosenblum performed three interactional evaluations between P.Z. and his long-term preadoptive foster mother. ***Id***. at 23. Dr. Rosenblum identified problematic

_____

[7] CYF also presented testimony from its caseworker, Ms. Malika Mason, who outlined the agency's interactions with Father and opined that termination was not warranted because Father complied with all of his FSP goals. However, noting that Ms. Mason failed to demand that Father support his asserted accomplishments with documentation verifying that he actually completed the required programs and services, the trial court found that Ms. Mason's testimony and opinions lacked credibility. ***See*** Trial Court Opinion, 10-15-14, at 5-6, 8-11.

patterns in Father's behavior regarding "the stability of his personal functioning, the direction of his lifestyle, and personality characteristics that would not be able to provide a stable family life, or secure family life for his son." *Id*. at 35.

Dr. Rosenblum found Father's parenting to be limited and marginal. *Id*. at 67. He characterized Father's parenting style as passive, non-responsive, and incapable of providing P.Z. structure. *Id*. Dr. Rosenblum highlighted that Father failed to engage P.Z. in learning activities or set limits during the interactional evaluations. He also observed that, although Father was pleasant and used appropriate tones with P.Z., Father was not proactive, instructional, or capable of establishing behavioral boundaries. *Id*. at 67-68. Dr. Rosenblum stated, "he did not set limits, [he] allowed [P.Z.] to climb dangerously [and] throw toys indiscriminately." *Id*. Thus, Dr. Rosenblum outright rejected the position that Father demonstrated sufficient parenting abilities. He stated, "So I would definitely disagree with any conclusion that father displays age appropriate parenting skills for [P.Z.]" *Id*. at 68.

As it relates to P.Z.'s wellbeing and the absence of a meaningful parent-child bond, Dr. Rosenblum stressed that, while P.Z. was familiar with Father, no attachment existed. *Id*. at 34, 40. He explained, "There is no history of father engaging in a caregiving relationship with [P.Z.], having to take responsibility for him over an extended period of time." *Id*. at 40. He

continued, "An attachment comes out of a care giving role and out of a repeated history of living and continuing a relationship with someone and having them meet a variety of developmental needs over a period of time, [such as] what I observed between [P.Z.] and foster mother." *Id*. at 40-41. For example, Dr. Rosenblum referenced an incident during one of the father-son interactional evaluations during which P.Z. began requesting his foster mother. Dr. Rosenblum testified that Father did an adequate job of consoling the child; however, the incident was evidence that P.Z. "had not identified father as a surrogate or alternative caregiver who could calm him[,] reassure him and make him feel fully comfortable." *Id*. at 32. He opined that the parent-child relationship had not started early enough for P.Z. to develop an attachment to Father. Thus, Dr. Rosenblum concluded that terminating Father's parental rights best served P.Z.'s needs and welfare and that, in light of the nurturing, supportive, and secure environment that the preadoptive foster mother provides, the evidence warranted proceeding with adoption. *Id*. at 41-42, 50. Tellingly, when Father's counsel suggested a hypothetical possibility of utilizing subsidized permanent legal custody ("SPLC") in lieu of adoption, Dr. Rosenblum reinforced, "in [P.Z.'s] case[,] I believe that adoption is far more superior than SPLC." *Id*. at 55.

Accordingly, for all of the foregoing reasons, we find that the record sustains the trial court's determination that CYF established the statutory

grounds to terminate Father's parental rights pursuant to § 2511(a)(8) and confirms that terminating Father's parental rights best satisfies P.Z.'s developmental, physical, and emotional needs and welfare under § 2511(b). Thus, we affirm the trial court order terminating Father's parental rights to P.Z. pursuant to § 2511(a) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015