J-S17002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: V.M.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3243 EDA 2016 |

Appeal from the Order Entered September 12, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-DP-0000106-2015,
FID: 51-FN-000096-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: V.M.C. , A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3244 EDA 2016 |

Appeal from the Decree September 12, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000726-2016,
FID: 51-FN-000096-2015

BEFORE:   OLSON, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 20, 2017**

A.P. ("Mother") appeals from the decree, entered on September 12,

2016, terminating her parental rights to her female child, V.M.C. (born in

August 2014) ("Child"). Mother also appeals from the order, entered on that

same date, changing Child's permanency goal to adoption.[1] We affirm.

The trial court made the following factual findings:

The family in this case became known to [the Philadelphia County Department of Human Services ("DHS")] on January 9, 2015, when DHS received a general protective services report that Mother and K.C. ("Father") used crack cocaine while caring for Child. On January 13, 2015, DHS visited Mother and Father in the home of M.P. ("Grandmother"), Child's maternal grandmother. DHS implemented a safety plan whereby Child would remain in the home in Grandmother's care, and Mother and Father would move out. Upon further investigation, DHS discovered that Grandmother was not an appropriate caregiver. DHS obtained an order for protective custody and removed Child, placing her in a foster home. On January 25, 2015, Child was adjudicated dependent and fully committed to DHS custody. The case was then transferred to a community umbrella agency ("CUA") which developed a single case plan ("SCP") with objectives for Mother. Over the course of 2015 and 2016, Mother did not complete her SCP objectives. . . .

The goal change and termination [hearing] was held on September 12, 2016. The CUA case manager testified that Mother's objectives since the start of this case were to attend the Achieving Reunification Center ("ARC") for parenting classes and housing services, engage in mental health and drug and alcohol treatment, and attend weekly visits with Child. CUA referred Mother to ARC on February 5, 2015, immediately after the SCP was developed.

CUA has been in contact with Mother for the life of the case, and has routinely informed her of her objectives. Mother enrolled at Greater Philadelphia Health Action ("GPHA"), for drug and alcohol treatment, but has attended inconsistently. Mother was discharged from GPHA twice for non-attendance, and had to be re-enrolled. Because of attendance problems and positive drug

_____

[1] K.C., Child's father ("Father"), also appealed the September 21, 2016 decree and order. Father's appeal is addressed at No. 3155 EDA 2016.

screen results, drug and alcohol treatment is still an objective for Mother. Mother is supposed to give drug screens twice monthly as part of her GPHA treatment. [During the five months prior to the hearing,] Mother gave two drug screens.

The trial court also ordered Mother to attend the clinical evaluation unit ("CEU") for drug screens and an assessment. Mother failed to appear for the first scheduled appointment. She appeared for the second appointment, but did not provide a drug screen or take the assessment. Mother's drug screen results show positives for benzodiazepines and cocaine, numerous instances of high trace amounts of benzodiazepines and cocaine[,] and abnormally low creatinine levels. Mother has not provided her treatment documents from GPHA, though this has been an objective since June 2016. Mother is prescribed medications for her mental health issues, but has never provided those prescriptions to CUA or CEU. Mother was evicted from her housing in June 2016, for nonpayment of rent. CUA had assisted Mother financially so she could keep her housing, but [she] was [still evicted.]

Mother's only income is [Supplemental Social Security Income], which she receives for depression and anxiety. Mother has been diagnosed with anxiety and major depressive disorder. Mother is enrolled in mental health [treatment] and is supposed to attend twice monthly. She attended three sessions in 2016, and has not engaged since July 2016. The sessions Mother attended were all group therapy; she has never attended individual therapy.

Mother's visits have never been unsupervised. Mother is appropriate during visits, but Child has no trouble separating from Mother when visits end. Since April 18, 2016, Mother has missed six visits: five were no-call, no-show, and for one Mother arrived after the conclusion of the visiting time. Child is happy to see the foster parents after visits. . . . Child [ha]s bonded with her foster parents and calls them "mom" and "dad."

Trial Court Opinion, 11/15/16, at 1-3 (internal citations, footnote, and certain capitalization omitted; paragraph breaks added).

The procedural history of this case is as follows. On August 12, 2016, DHS filed a petition to involuntarily terminate Mother's parental rights with respect to Child. On September 12, 2016, the trial court held an evidentiary hearing on the termination petition. Mother and Father were present and represented by counsel. A child advocate was present and represented Child. At the conclusion of the hearing, the trial court entered a decree terminating Mother's parental rights to Child and an order changing her permanency goal to adoption. This timely appeal followed.[2]

Mother raises four issues for our review:

1. Did the [trial court err] by terminating Mother's parental rights where [DHS] did not prove by clear and convincing evidence that Mother had not relieved the circumstances which brought [C]hild into care and could not relieve[] them within a reasonable amount of time?

2. Did the [trial court err] by terminating Mother's parental rights where there is no clear and convincing evidence that Mother has evidenced a settled purpose of relinquishing parental claim to [C]hild or has refused or failed to perform her parental duties?

3. Did the [trial court err] by terminating Mother's parental rights as there was insufficient evidence presented to break the bond [C]hild shared with Mother and where there was no clear and convincing evidence that [C]hild would not be harmed by the termination of Mother's parental rights?

_____

[2] Mother filed a concise statement of errors complained of on appeal ("concise statement") contemporaneously with her notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i) and (b). On November 15, 2016, the trial court issued its Rule 1925(a) opinion. All of Mother's issues were included in her concise statement.

4. Did the [trial court err] when it changed [C]hild's goal to adoption as substantial, sufficient, and credible evidence was presented at the time of trial which would have substantiated denying the [p]etition for [g]oal [c]hange?

Mother's Brief at 4.

We consider Mother's first three issues together as they challenge the sufficiency of the evidence to terminate her parental rights. We

> must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

*In re C.M.C.*, 140 A.3d 699, 704 (Pa. Super. 2016) (citations omitted). "The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid." *In re K.H.B.*, 107 A.3d 175, 178 (Pa. Super. 2014) (citation omitted).

Mother argues that the trial court erred in terminating her parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *In re Adoption of C.J.P.*, 114 A.3d 1046, 1050 (Pa. Super. 2015) (citation

- 5 -

omitted). We focus our attention on subsection 2511(a)(2). Section 2511 provides, in relevant part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

As this Court has explained:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect[,] or refusal; (2) such incapacity, abuse, neglect[,] or refusal has caused the child to be without essential parental care, control[,] or subsistence necessary for [her] physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect[,] or refusal

- 6 -

cannot or will not be remedied. The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (internal quotation marks and citation omitted).

Mother asserts that she remedied the conditions that caused the placement of Child and she is now able to care for Child. Mother alleges that she has worked to meet the goals required of her, and that she attended and completed the ordered parenting classes in July 2015 through ARC. Mother states that she completed a housing workshop at ARC, and currently resides in a three-bedroom home that is an appropriate residence for her and Child. What Mother fails to recognize, however, is that she was recently evicted from a residence for failing to pay rent. She was evicted despite CUA providing her with rent assistance. Thus, the trial court reasonably concluded that Mother was unwilling or unable to maintain appropriate housing for Child.

Mother also states that, although she was twice discharged from GPHA's drug and alcohol treatment program due to inconsistent attendance, each time she re-enrolled. Mother fails to acknowledge that in addition to being discharged from the program multiple times for inconsistent attendance, she has repeatedly failed drug screens. The drug screens indicate that Mother is still using benzodiazepines and cocaine. On other

occasions, Mother refused to provide drug screens which indicates that she may also be using other drugs.

Mother asserts that she has been diagnosed with anxiety and major depressive disorder, for which she is prescribed medication, and that she is enrolled in mental health treatment. As the trial court noted, however, Mother failed to provide the prescription for her medication. Furthermore, Mother only attended three group mental health treatment sessions. She did not receive treatment in the months prior to the evidentiary hearing and refused to attend individual counseling sessions.

Mother also avers that she attended the medical appointments for Child. Mother states that her visits with Child are always appropriate, and that she never appeared at a visit in an intoxicated state. She argues that she has attended the vast majority of her twice-weekly visitations, and only recently missed some appointments because she had to care for her sick mother. This explanation, however, does not excuse Mother from failing to inform DHS that she was unable to attend the visits. This lack of responsibility indicates that Mother is unwilling or unable to remedy the incapacity which left Child without appropriate parental care.

After considering the totality of the circumstances, the trial court determined that DHS proved by clear and convincing evidence that Mother caused Child to be without essential parental care necessary for her well-being. Moreover, the trial court determined that DHS proved by clear and

convincing evidence that Mother cannot or will not remedy her incapacity which led to Child being without essential parental care. For the reasons set forth above, we ascertain no abuse of discretion in this determination.

Having determined that DHS satisfied subsection 2511(a)(2), we next consider section 2511(b)'s requirements. The focus in terminating parental rights under section 2511(a) is on the parent, but the focus under section 2511(b) is on the child. *In re P.Z.*, 113 A.3d 840, 850 (Pa. Super. 2015) (citation omitted).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term bond is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the []section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

*C.D.R.*, 111 A.3d at 1219 (internal quotation marks and citations omitted).

Mother argues that Child lived with her for the first months of Child's life. This argument, however, indicates why there is no bond between Child and Mother. Child was so young at the time she lived with Mother that she was unable to form a meaningful bond with Mother.

Mother avers that she continued visitation in order to maintain her bond with Child. As noted above, although Mother has visited Child, none of those visits were unsupervised. Furthermore, Mother frequently missed her

schedule visits and failed to inform DHS that she would not be attending the missed visits.

Mother contends that Child knows that Mother is in fact her mother and refers to her as "mom." As such, Mother argues that DHS failed to establish that Child would not suffer irreparable harm if Mother's parental rights were terminated. Although Child recognizes Mother is her biological mother, Child calls her foster parents "mom" and "dad" and has no problem separating from Mother at the conclusion of those visits Mother attends. Instead, Child is happy to reunite with her foster parents. Therefore, we ascertain no abuse of discretion in the trial court's determination that there was no meaningful bond between Mother and Child.

Furthermore, "[t]he psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood." *In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (citation omitted). Thus, the trial court may emphasize the safety needs of the child when evaluating section 2511(b). *See In re K.Z.S.*, 946 A.2d 753, 763-764 (Pa. Super. 2008). As noted above, Mother is a drug addict who continues to use cocaine and other drugs despite knowing that she is subject to drug testing. She is unable to maintain consistent housing, even with the financial support of outside agencies. Therefore, terminating Mother's parental rights is best for Child's safety.

After considering the relevant factors, the trial court determined that DHS proved by clear and convincing evidence that terminating Mother's parental rights was in Child's best interest. We ascertain no abuse of discretion or error of law in this determination. As DHS satisfied section 2511(a)(2) and (b), we affirm the decree terminating Mother's parental rights as to Child.

In her final issue, Mother argues that the trial court erred in changing Child's permanency goal to adoption. This argument is waived. The argument section of Mother's brief does not contain any argument as to the trial court's order changing Child's permanency goal to adoption. Instead, the argument portion of Mother's brief only addresses the involuntary termination of her parental rights. **See** Mother's Brief at 10-16. Accordingly, Mother waived any challenge to the order changing Child's permanency goal to adoption. **See** Pa.R.A.P. 2119(a).

Decree and order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2017

- 11 -