J-S10017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO K.M.R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.N.B., MOTHER | : : : : : : | |
| | : | No. 3542 EDA 2017 |

Appeal from the Order Entered September 28, 2017
In the Court of Common Pleas of Lehigh County
Orphans' Court at No(s):  A2017-0033

BEFORE:  BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                              **FILED APRIL 23, 2018**

K.N.B. ("Mother") appeals from the order entered on September 28, 2017 that granted the petition filed by the Lehigh County Office of Children and Youth Services ("the Agency") involuntarily terminating her parental rights to her now nine-year-old daughter  K.M.R. ("Child").  We affirm.

The factual background of this case is as follows.  In January 2009, Child was born.  Soon thereafter, Mother separated from Child's father, T.R.  In August 2010, Mother and Child moved in with Mother's aunt and uncle.  Three months later, Mother moved out of the residence; however, Child remained with her great-aunt and great-uncle.  In February 2011, T.R. died of a drug overdose.  In July 2011, Child returned to Mother's care.

For the next year, Mother's aunt and uncle had little contact with Child.  In July 2012, Mother requested that her aunt and uncle care for Child every

weekend. They agreed and exchanged custody of the Child every Friday and Sunday evening. This arrangement continued for approximately three years.

On December 21, 2015, police responded to a hotel room where they found a man with his pants removed, lubricant, and the imprint of a child's buttocks on the counter. Two young girls, including Child, were in the room. Police determined that Child was not sexually assaulted but the other girl in the room was sexually assaulted in Child's presence.[1]

As a result of this incident, the Agency initiated shelter care proceedings. Prior to the shelter care hearing, Mother informed the Agency that she was using heroin. Child was immediately placed in the care of Mother's aunt and uncle and, at that time, Mother conceded this was in Child's best interests. On January 9, 2016, the trial court adjudicated Child dependent. On February 7, 2016, Mother moved to South Carolina. While in South Carolina, Mother had periodic phone conversations with Child. In July 2016, Mother moved back to Pennsylvania.

From the time she moved back to Pennsylvania until the termination hearing, Mother was noncompliant with the trial court's dependency order and failed to follow the Agency's directives. She continued using drugs. She arrived late when visiting Child and was occasionally under the influence of

_____

[1] The man was the boyfriend of Mother's acquaintance and Mother had agreed to let him take the two girls for a manicure.

drugs. She did not participate in mental health and drug counseling programs, was unemployed, and lived in an apartment that was not habitable as it lacked running water. Mother failed to provide necessary information to the Agency and did not attend all of the permanency review hearings.

On July 3, 2017, the Agency filed a petition seeking to involuntarily terminate Mother's parental rights as to Child and to change Child's permanency goal to adoption. On August 10 and 11, 2017, a termination hearing was held. Child had a court-appointed special advocate representing her best interests and a separate attorney representing her legal interests. On September 28, 2017, the trial court entered the order involuntarily terminating Mother's parental rights as to Child and changing Child's permanency goal to adoption. This timely appeal followed.[2]

> Mother presents two issues for our review:
>
> 1. Did the trial court err as a matter of law and/or abuse its discretion in finding that [the Agency proved] the requirements of 23 Pa.C.S.A. § 2511(a)(1) and (2) by clear and convincing evidence?
>
> 2. Did the trial court err as a matter of law and/or abuse its discretion in finding that the [Agency] sustained [its] burden of proof by clear and convincing evidence that the termination of [M]other's parental rights [was in Child's best interests]?

Mother's Brief at 7 (complete capitalization removed).

---

[2] Mother and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

We review an order involuntarily terminating parental rights for an abuse of discretion. *In re C.M.C.*, 140 A.3d 699, 704 (Pa. Super. 2016) (citations omitted). "The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid." *In re K.H.B.*, 107 A.3d 175, 178 (Pa. Super. 2014) (citation omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *In re Adoption of C.J.P.*, 114 A.3d 1046, 1050 (Pa. Super. 2015) (citation omitted). The trial court found that the requirements of sections 2511(a)(1), (2), (5), and (8) were satisfied. In her brief, Mother does not argue that the trial court erred by finding that the requirements of sections 2511(a)(5) and (8) were proven by clear and convincing evidence. Therefore, she has waived any such argument. *See* 2116(a), 2119(a). Hence, we need not address Mother's first issue because, even assuming *arguendo* that the trial court erred by finding that sections 2511(a)(1) and (2) were satisfied, we would affirm the trial court's decision regarding the termination of parental rights under sections 2511(a)(5) and (8).

Having determined that Mother waived any argument as to whether the Agency satisfied sections 2511(a)(5) and (8), we next consider section 2511(b)'s requirements. The focus in terminating parental rights under

section 2511(a) is on the parent, but the focus under section 2511(b) is on the child. ***In re P.Z.***, 113 A.3d 840, 850 (Pa. Super. 2015) (citation omitted).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term bond is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the []section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

***In re Adoption of C.D.R.***, 111 A.3d 1212, 1219 (Pa. Super. 2015) (internal quotation marks and citations omitted).

Mother argues that the lack of expert testimony precluded the trial court from finding that the Agency satisfied its burden under section 2511(b). As this Court has stated, however, a trial "court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well." ***In re Adoption of M.A.B.***, 166 A.3d 434, 444 (Pa. Super. 2017) (citation omitted). In this case, the social worker testified that termination was in Child's best interests. N.T., 8/11/17, at 66. She explained that Child needs stability which her great-aunt and great-uncle are able to provide. ***See id.*** at 66-67. She further testified that Mother is unable to provide that stability and that Child has thrived while living with her great-aunt and great-uncle. ***See id.*** Hence, although there was no expert testimony regarding Child's best

interest, the social worker's testimony showed that termination of Mother's parental rights was in Child's best interests.

Mother also points to the clear bond between Child and Mother. As the trial court correctly found, "[Child] has an emotional bond with [Mother]." Trial Court Opinion, 9/28/17, at 18. As this Court has stated, "[o]ne major aspect of the [best interests] analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *In re D.L.B.*, 166 A.3d 322, 326 (Pa. Super. 2017) (citation omitted). Thus, according to Mother, the existence of an emotional bond between herself and Child indicates that the trial court's legal conclusion that termination of her parental rights was in Child's best interests was incorrect. We disagree.

Although the emotional bond between a child and parent is one factor in the section 2511(b) analysis, the safety and welfare of the child is also an important component of the analysis. *See C.D.R.*, 111 A.3d at 1219; *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). This is because

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and [a child] is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the

child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).

In this case, the evidence was overwhelming that Child has her developmental, physical, and emotional needs met by her great-aunt and great-uncle while Mother is unable to meet those needs. Mother is unable to reliably show up for visitations with Child on time, appear sober at court proceedings and visitations with Child, attend necessary counseling sessions, maintain stable employment, or provide appropriate living arrangements. Moreover, Mother is unable to recognize when other individuals pose a danger to Child, as is evidenced by the situation at the hotel detailed above. In short, Child is safe and has thrived since being in her great-aunt's and great-uncle's care. On the other hand, she faced continuous risks while living with Mother. Therefore, the trial court correctly concluded that the safety and welfare of Child was best served by terminating Mother's parental rights and that benefit outweighed any emotional bond between Mother and Child. Hence, the trial court did not err by finding that the Agency proved by clear and convincing evidence that termination of Mother's parental rights was in Child's best interests.

Order affirmed.

Judge Bowes joins.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/18