J-S56024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO Z.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.S., MOTHER | : : : : : | |
| | : | No. 868 MDA 2018 |

Appeal from the Decree, May 2, 2018,
in the Court of Common Pleas of Lancaster County,
Orphans' Court at No(s):  0023 of 2018.

BEFORE:  GANTMAN, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED NOVEMBER 26, 2018**

S.S. (Mother) appeals from the decree entered on May 2, 2018, which involuntarily terminated her rights to her nearly three-year-old son Z.S.  We affirm.

We glean from the orphans' court opinion the following history:

> On June 14, 2016, Mother contacted the [Lancaster County Children and Youth Social Services] Agency requesting [Child] be taken into agency custody because Mother was being evicted from her residence.  N.T., 5/1/18, at 9.  The Agency met with Mother and made an assessment.  Other options were discussed besides the Agency taking custody, but Mother refused these options.  *Id*.  During the assessment period, the Agency received additional information regarding Mother's drug use and her inadequate supervision of the child.  While Mother was caring for [the infant Child], she appeared to be under the influence and there was a smell of marijuana emanating from her residence.  *Id*., at 10.  Mother's stove burners were lit with nothing on the stove; the sink faucet was running and the water was nearly overflowing and [Child] was sitting,

> unsupervised, in an open doorway leading to a balcony and stairs. ***Id***.

Orphans Court Opinion, at 1-2.

After adjudicating Child dependent, the trial court approved a "Child Permanency Plan" to aid reunification with Mother. The plan provided that Mother shall complete the following goals: improve her mental health functioning; remain free of drugs and misuse of alcohol; remain crime free; to learn parenting skills; achieve financial stability; obtain and maintain safe housing; and maintain an ongoing commitment to her child. Notably, Mother submitted to drug/alcohol and mental health evaluations, but the evaluators recommended no further treatment. But after these evaluations, the Agency learned Mother still used drugs and misused alcohol. The Agency further discovered that Mother received mental health treatment for bipolar disorder with schizoaffective features. Meanwhile, the dependency case proceeded for 22 months, during which time Mother was largely noncompliant with the rest of her plan. Ultimately, the Agency petitioned the court to involuntarily terminate Mother's rights. The court conducted the instant hearing on May 1, 2018 and issued a decree granting the termination petition under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) and (b) Mother appeals.

She presents a singular issue for our review:

> Was it an abuse of discretion to grant the Agency's petition where Mother had submitted to drug and alcohol and mental health evaluations both of which resulted in no treatment recommendations but where the Agency subsequently became aware of Mother being in private counseling and

using drugs and alcohol and where the Agency made no referrals for evaluations?

Mother's Brief, at 7.

The party seeking termination of parental rights has the burden of proving by clear and convincing evidence the existence of grounds for doing so. ***In re Adoption of M.R.B.,*** 25 A.3d 1247, 1251 (Pa. Super. 2011). When reviewing an appeal from a decree terminating parental rights, the reviewing court is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. ***In re P.Z., 113 A.3d 840, 815*** (Pa. Super. 2015) (internal citations omitted). This is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination. ***Id.*** (citing ***In re A.S***., 11 A.3d 474, 477 (Pa. Super. 2010)). The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. ***In B.,N.M.***, 856 A.2d 847, 954 (Pa. Super. 2004) (citations omitted).

Mother argues she largely complied with the reunification plan because her evaluators recommended no further treatment, either on account of her mental health or her drug and alcohol use. She maintains that the court's contrary conclusion is an abuse of discretion. Mother cites no relevant case

law to support her argument. And her theory ignores the totality of the circumstances, which clearly and convincingly supports termination. The orphans' court thoroughly articulates Mother's lack of compliance and progress in meeting her goals in its Rule 1925(a) opinion:

> Despite [Child] being in Agency custody for twenty-two months, Mother has failed to complete her plan's objectives. N.T., at 58. As part of Mother's mental health objective, she received an evaluation and it was recommended that she be randomly drug-screened, sign a release for information from her probation officer, and complete a substance abuse evaluation. *Id*., at 11. Mother was not recommended for any further mental health treatment, however, subsequent to her evaluation, Mother reported that she was seeing a psychologist for ongoing mental health treatment. *Id*. Mother had been diagnosed as bipolar with schizoaffective features and Mother was to seek a provider for medication management. Mother provided no evidence that she followed the recommendation. *Id*., at 12. It was reported that Mother inconsistently attended her individual therapy sessions. *Id*. Mother completed her drug and alcohol evaluation and no treatment was recommended. *Id*., at 13. Once again subsequent to the evaluation, Mother admitted she used synthetic marijuana, missed two mandatory drug screenings, was cited for public drunkenness twice, and tested positive for benzodiazepine twice. *Id*., at 14-15, 33.

> Mother's failure to complete her objective of remaining crime free. *Id*., at 13. Mother has an extensive criminal history. *Id*., at 13-14. At the time [Child] was taken into custody, Mother was a Drug Court participant until she was arrested on September 19, 2016 for failing to appear at Drug Court. *Id*., at 14. In October 2016, Mother was cited for driving with a suspended license and, in February 2017, for public intoxication and received thirty days house arrest. *Id*. On April 10, 2017, she was charged with defiant trespass. She was incarcerated again from April 14, 2017 until May 2, 2017 for public drunkenness and false reports to law enforcement. *Id*., at 14-15. Mother received another citation for public drunkenness and has been incarcerated

since October 2017 after unsuccessfully completing Drug Court. *Id*., at 15, 40.

Mother has not completed the objectives of financial and housing stability. Upon her release from prison, she intends to reside with maternal grandmother. *Id*., at 16. Mother admitted to the Agency that [the] residence would not be suitable for the child. *Id*., at 19. Her plan is to go to a recovery house for six months to a year upon release but Child would not be allowed to stay with her. *Id*., at 47. Mother was discharged from Reunify, Empower, and Prevent Program on November 8, 2017. *Id*., at 19-20. She is currently unemployed. Prior to her incarceration, she only worked sporadically. *Id*., at 18.

Mother failed to learn and use good parenting skills. Despite her incomplete mental health and drug and alcohol objectives, the Agency referred her for parenting classes[…]. [She] has not successfully completed the same. *Id*., at 17.

Mother has an objective to maintain a commitment to Child. While the child has been in Agency custody, 54 visits were scheduled for Mother to visit Child of which Mother only attended 20. *Id*., at 21-22. Her last visit with Child was September 14, 2017. *Id*., at 52.

The best interests of Child is served by remaining in foster care and being adopted. He has been in care for 22 months. The court is convinced Mother will not resolve her significant issues in a reasonable amount of time. Child remains in a loving and healthy home which is a potentially permanent resource. *Id*., at 24. He has bonded with this foster family that he has been placed with since February 5, 2016. *Id*., at 24-26. Child has special needs that require weekly occupational therapy and weekly "theraplay" with a behavioral focus special instructor. *Id*., at 25. []Child was evaluated and diagnosed with posttraumatic stress disorder and child neglect. *Id*., at 29. Child cannot wait for an indefinite period of time for the stability and care of a permanent family in hope that his Mother will drastically change her behavior and accomplish her goals. The guardian ad litem concurs with the termination of parental rights. *Id*., at 58.

Orphans' Court Opinion, at 5-7.

Thus, it is clear that Mother's mental health was only one factor the court considered when arriving at its conclusion. Mother's mental health recommendation and further treatment were not discounted, but neither were her ongoing mental health issues that likely contributed, at least in part, to the need for Child to remain in placement for nearly two years. Similarly, while acknowledging the evaluator's recommendation of no further drug and alcohol treatment, the court observed that Mother had not complied with her drug screens nor had she maintained a drug-free lifestyle. In fact, her alcohol misuse caused continuous legal problems, which in turn also contributed to the need for Child to remain in placement.

Finally, Mother notes that the Agency made no additional referrals after becoming aware of Mother's subsequent mental health treatment and her subsequent drug and alcohol use. *See* Mother's Brief, at 7. Perhaps she means that the Agency did not make reasonable efforts toward reunification. From what we can tell, that is not the case. But even if it were, the failure to provide reasonable efforts is not a basis for denying termination. *See In re D.C.D.*, 105 A.3d 662, 675-76 (Pa. 2014).

We find that the record supports the court's decision to grant the Agency's petition for termination. Accordingly, we affirm the decree terminating Mother's rights.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2018