J-S65037-18; J-S65046-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: X.A.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.M.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1124 MDA 2018 |

Appeal from the Decree Entered June 6, 2018
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  2017-00029,
2017-00030, 2017-00031

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION | : | IN THE SUPERIOR COURT OF |
| OF PARENTAL RIGHTS TO A.N.J., A | : | PENNSYLVANIA |
| MINOR | : | |
| | : | |
| | : | |
| APPEAL OF: C.M.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1125 MDA 2018 |

Appeal from the Decree Entered June 6, 2018
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  2017-00029

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION | : | IN THE SUPERIOR COURT OF |
| OF PARENTAL RIGHTS TO C.A.L., A | : | PENNSYLVANIA |
| MINOR | : | |
| | : | |
| | : | |
| APPEAL OF: C.M.G., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | No. 1126 MDA 2018 |

Appeal from the Decree Entered June 6, 2018
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  2017-00031

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO C.A.L., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.L., FATHER | : : : : | |
| | : | No. 1127 MDA 2018 |

Appeal from the Decree Entered June 6, 2018
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  2017-00031

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: MAY 22, 2019**

C.M.G. (Mother) appeals from the decree entered June 6, 2018, terminating her parental rights to her minor children, A.N.J., X.A.S., and C.A.L. In addition, J.L. (Father) appeals from the decree entered June 6, 2018, terminating his parental rights to his minor child, C.A.L. We now consolidate these appeals and affirm.[1]

The following facts are not in dispute. In March 2016, Mother and Father overdosed on suboxone in the presence of their children.[2] They were arrested, and following guilty pleas, the parents were sentenced to state intermediate punishment (SIP). They have remained incarcerated or placed in supervised housing in a halfway house since that date. There is no date certain for their

---

[1] **See** Pa.R.A.P. 513.

[2] A.N.J. was born December 2007; X.A.S. was born June 2009; C.A.L. was born July 2011.  Mother is the natural mother of all three children; Father is the natural father of C.A.L.

release from SIP, as it is contingent upon an established home plan with stable housing and continued compliance with drug and alcohol treatment requirements.

Following the parents' arrest, H.G., the children's maternal aunt, brought the children to Huntingdon County Children and Youth Services (HCCYS). The children were immediately placed into a foster home, and they have remained in the same foster home since that date. In April 2016, the orphans' court adjudicated the children dependent and awarded legal and physical custody to HCCYS. The parents have had minimal contact with the children since their dependency.

HCCYS developed several goals for Mother and Father to complete prior to reunification with the children, including: stable housing for six months; successful completion of their SIP; drug and alcohol treatment; and individual counseling. Both parents have completed the incarceration portion of their SIP sentences, completed a drug rehabilitation program, and attended counseling and parenting classes. However, they reside in separate halfway houses, and it is unclear when they can reunite and obtain stable housing.

In August 2017, HCCYS filed petitions seeking involuntary termination of both parents' rights. The orphans' court held hearings on the petitions in

November 2017 and February 2018.[3] In June 2018, the orphans' court granted the petitions and terminated the parental rights of Mother and Father.

Mother and Father timely appealed and filed Pa.R.A.P. 1925(b) statements. The orphans' court issued a responsive opinion.

On appeal, Mother raises the following issues:

1. Whether the lower court lacked competent evidence to support any ground for termination through 23 Pa.C.S. § 2511(a)(1), (a)(2), (a)(5) or (a)(8).

2. Whether the remainder and nature of [Mother's] S.I.P. sentence was so great as to preclude [Mother] from providing permanency within a reasonable time.

Mother's Br. at 4.[4]  Similarly, Father raises the following issues:

1. Whether the orphans' court committed an abuse of discretion or error of law when it concluded that [HCCYS] established grounds for termination of parental rights under 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), and (a)(8)[;]

2. Whether [F]ather's participation in the Department of Corrections [SIP] [p]rogram constituted good cause to not terminate [F]ather's parental rights[.]

Father's Br. at 5.

We examine these issues concomitantly. Essentially, Mother asserts that she has diligently pursued successful completion of the SIP program and has sought to maintain contact with her children. Mother's Br. at 12. According to

---

[3] The court appointed legal counsel for the children, **see** Order, filed Oct. 24, 2017, who filed a Child Preference Report on March 13, 2018.

[4] Mother has filed identical briefs in support of her claims for relief as to each of her children.

Mother, the court discerned no "settled intent" to relinquish her rights. *Id.* at 16. Further, Mother suggests that the remainder and nature of her sentence will permit Mother to provide permanency to her children "within a reasonable time." *Id.* at 19. Thus, she concludes, the court erred when it failed to consider her individual circumstances or place sufficient weight on her progress to completing her goals. *Id.*

As for Father, he asserts that he has made significant progress toward alleviating the conditions that led to placement. Father's Br. at 9, 16-17. According to Father, the court erred when it ignored this progress. *Id.* at 9. He suggests, further, that his reunification goals set "an impossible task." *Id.* at 22.

Neither parent has offered any argument suggesting there is an emotional bond between them and the children. *See* Mother's Br. at 13-22; *but see* Father's Br. at 21 (merely suggesting that "C.A.L. knew [Father]" and that they had previously lived "as a family unit").

We adhere to the following standard of review:

> In an appeal from an order terminating [or declining to terminate] parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also

support an opposite result. Absent an abuse of discretion, an error of law, or insufficient evidentiary support, the trial court's termination order must stand.

**In re Adoption of R.J.S.**, 901 A.2d 502, 506-07 (Pa.Super. 2006) (internal quotations and citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which generally requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

**In re P.Z.**, 113 A.3d 840, 850 (Pa.Super. 2015) (formatting modified; citation omitted).

In this case, the trial court terminated the parents' rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(8) and (b), which provides as follows:

(a) General Rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Thus, there are three requirements for termination under Section 2511(a)(8):

(1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*P.Z.*, 113 A.3d at 851 (citation omitted).

In order to satisfy these statutory grounds, the party seeking termination must provide clear and convincing evidence that termination is warranted. ***In re C.L.G.***, 956 A.2d 999, 1004 (Pa.Super. 2008) (*en banc*). In this context, "clear and convincing evidence" is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (formatting modified; citation omitted).

There is no dispute here that the children were removed from the parents' care in March 2016, more than 12 months prior to HCCYS's petitions for termination. Thus, the first requirement under Section 2511(a)(8) has been met.

Regarding the second requirement, the orphans' court found that, while both parents made admirable progress in addressing their drug addiction, they could not remedy their ongoing incapacity quickly enough to warrant reunification. ***See*** Orphans' Ct. Op. at 5-6. This Court has observed previously that "termination under Section 2511(a)(8), does not require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of [their] children." ***R.J.S.***, 901 A.2d at 511 (emphasis in original). To the contrary, in reviewing whether termination pursuant to Section 2511(a)(8) was appropriate, we have rejected arguments highlighting the progress a parent has made. ***C.L.G.***, 956 A.2d at 1007-08 (concluding parent's progress addressing drug addiction did not toll indefinitely child's need for well-being and permanency); ***R.J.S.***, 901 A.2d at 511-13 (rejecting lower

- 8 -

court's acceptance that mother could remedy drug abuse and neglect within reasonable time); *In re S.H.*, 879 A.2d 802, 806 (Pa.Super. 2005) (rejecting mother's "significant life achievements" in light of "competent evidence that the conditions [for removal] continue to exist"). Thus, the arguments from Mother and Father that the orphans' court failed to consider adequately their progress toward meeting their reunification goals are not persuasive.

In March 2016, the children were removed from the care of Mother and Father because they were unable to provide the children with a stable home environment. The parents were required to successfully complete their SIP and maintain stable housing for six months before reunification would be possible. While both parents continue to make progress, they have yet to complete their SIP and are currently unable to provide their children with stable housing.

Both parents suggest the court erred when it cited their incarceration as justification for terminating their rights to the children. *See, e.g.*, Mother's Br. at 16 (citing Orphans' Ct. Op., filed July 31, 2018, at 3); Father's Br. at 17-20 (same). Nevertheless, as noted by the court, a parent's incarceration may be a relevant consideration. Orphans' Ct. Op. at 4-5 (citing *In re Adoption of S.P.*, 47 A.3d 817, 829-30 (Pa. 2012)). This is particularly true where, as here, the parents could not provide the court with a date certain that they would complete their SIP or secure stable housing. Thus, the conditions that led to placement continue to exist, and we conclude that the second requirement under Section 2511(a)(8) has been met. *See S.P.*, 47

A.3d at 831 (concluding parent's uncertain parole date and questions regarding housing established ongoing incapacity relevant to analysis of Section 2511(a)(2)).

Finally, in order to establish the third statutory requirement of Section 2511(a)(8), the evidence must demonstrate that termination of parental rights would best serve the needs and welfare of the child. **C.L.G.**, 956 A.2d at 1009; **P.Z.**, 113 A.3d at 851. Here, the orphans' court reasoned as follows:

> The best interests of the children include permanency in a home with stability, structure, and love. After being placed in foster care in 2016, all three children were diagnosed with Post Traumatic Stress Disorder and currently attend weekly counseling sessions. Despite the trauma endured while in the care of Mother and Father, the children are reported to be "thriving" in [their] foster home. They refer to their foster parents as "mom" and "dad" and repeatedly have expressed their desire to remain with [their foster parents] forever. There can be no question that the best interests of the children is to have the parental rights of their natural parents terminated.

Orphans' Ct. Op. at 6.

As the record supports this analysis, we conclude that the third requirement under Section 2511(a)(8) has been met. Additionally, though it is preferable that a court address the third requirement of Section 2511(a)(8) and Section (b) separately, we discern no abuse of the court's discretion in concluding that termination would best serve the needs and welfare of the children. **See C.L.G.**, 956 A.2d at 1009 (acknowledging the third requirement of Section 2511(a)(8) coincides with Section 2511(b) but suggesting distinct analyses).

For these reasons, we affirm the decrees of the orphans' court.

Appeals consolidated; decrees affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2018