J-S32016-23; J-S32046-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.M.H. JR., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.L.A., MOTHER | : : : : : : : | |
| | : | No. 751 MDA 2023 |

Appeal from the Decree Entered May 5, 2023
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s): 42-ADOPT-2022

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.M.H., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.L.A., MOTHER | : : : : : | |
| | : | No. 752 MDA 2023 |

Appeal from the Decree Entered May 5, 2023
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s): 43-ADOPT-2022

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.M.H., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.H., SR., FATHER | : : : : : | |
| | : | No. 753 MDA 2023 |

Appeal from the Decree Entered May 5, 2023
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s): 43-ADOPT-2022

J-S32016-23; J-S32046-23

| IN RE: ADOPTION OF J.M.H., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M.H., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 754 MDA 2023 |

Appeal from the Decree Entered May 5, 2023
In the Court of Common Pleas of Franklin County Orphans' Court at
No(s):  42-ADOPT-2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED NOVEMBER 08, 2023**

In this consolidated matter, J.M.H., Sr. (Father) and S.L.A. (Mother) each appeal the decrees entered by the Franklin County Orphans' Court, which terminated their respective parental rights to their eight-year-old daughter, M.M.H., and ten-year-old son, J.M.H., Jr. (the Children).  After careful review, we affirm.

The record discloses the following factual and procedural history:  The family came to the attention of the Franklin County Children & Youth Services Agency (the Agency) in 2017, following allegations that J.M.H., Jr. was the victim of medical neglect.  At the time, J.M.H., Jr. was five years old, but he was not toilet trained, nor enrolled in any educational programs.  He was also developmentally delayed.  The Agency referred the family for services, and the case was closed.

- 2 -

The Agency received a second referral two years later, in 2019. The then-seven-year-old J.M.H., Jr. was still not toilet trained, nor enrolled in school. The Agency referred to the family to a service provider, Justice Works, which could help facilitate further evaluations. Soon thereafter, the Agency received another referral, which alleged that the Child was developmentally and medically neglected. The Child had suffered from seizures but received no medical treatment. The Child showed signs of cognitive developmental delays, was non-verbal, and still used a stroller.

In August 2019, the Agency obtained an emergency order for protective custody and removed both Children from the home and placed them together in foster care. The Agency discovered that the family's home was in poor condition; there was a pungent odor of cat urine, trash and clutter throughout, and there was a cockroach infestation.

In September 2019, the juvenile court adjudicated the Children dependent and placed them in foster care. To facilitate reunification, the court required the parents to achieve the following objectives: 1) complete a parental fitness assessment; 2) obtain and maintain safe and stable housing; 3) maintain financial stability; 4) maintain consistent and frequent visitation with the Children; and 5) participate in the Children's medical appointments. The Agency was directed to reimburse the parents for milage costs associated with attending medical appointments.

The parental assessments indicated that the parents have low cognitive functioning. A service provider, Alternative Behavior Consultants (ABC),

recommended parenting education, outpatient mental health counseling; ABC further recommended that Father participate in anger management. The service provider also implemented its Training for Improved Parenting Skills (TIPS) program; later, when TIPS proved unsuccessful, the service provider began another program called SKILLS, which was a more intensive, hands-on approach. The SKILLS program was eventually discontinued; one assessment showed that Mother and Father's parenting skills were **less** proficient after the implementation of the SKILLS program than when it began.

During the dependency proceedings, the parents struggled to implement the parenting skills taught by the service provider. They cancelled many of the visits with the Children. Although the parents changed residences, the condition of the home remained substandard. Eventually, ABC discharged the parents due to lack of progress. Another service provider, CAS, took over. Similarly, CAS did not recommend that the parents receive increased visitation.

J.M.H., Jr. was diagnosed with Expressive Receptive Language Disorder, seizures, and developmental delays. He no longer takes medication, but he still attends therapy. M.M.H. was diagnosed with ADHD and with an attachment disorder, for which she takes medication and attends therapy. By early 2022, the parents stopped attending the Children's medical appointments. Similarly, the parents only attended approximately half of the visits with the Children.

The Agency filed termination petitions in November 2022. The hearing was set for December, but Father motioned the court to appoint the Children with separate legal counsel. The orphans' court granted the request, and the hearing was continued until March 17, 2023.[1] Following the hearing, the court issued decrees terminating the parents' rights on May 5, 2023. The respective decrees included findings of facts and the court's application of the relevant law.

Both parents present identical issues for our review. We re-order these issues for ease of disposition:

1. Whether the trial court abused its discretion in determining that the Agency met its burden under 23 Pa.C.S.A. § 2511?

2. Whether the trial court's credibility determinations are supported by the record?

Father's Brief at 4; Mother's Brief at 4.

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have

---

[1] Both of the Children's respective counselors represented that their clients wished to be adopted by the foster parents.

> previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 265 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate could should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Generally speaking, we need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the court's decree. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*); *see also C.S.*, 761 A.2d at 1201. In this case, however, because neither parent challenges the court's determinations under Section 2511(b), we need only agree with the orphans' court as to any one subsection under Section 2511(a) to affirm.[2]

We note that the orphans' court denied the Agency's petitions, insofar as they alleged that termination was warranted under Section 2511(a)(1) (providing that grounds for termination are met when, for a period of at least

---

[2] We clarify that the parents do not concede that termination was warranted under Section 2511(b). Rather, they contend that the orphans' court never should have reached that second step of the termination analysis, because termination was not warranted under Section 2511(a). In any event, they have limited their appeals to the court's findings under the first step of the analysis, Section 2511(a).

six months, the parent has evidenced a settled purpose of relinquishing their parental claim or has refused to parent). However, the court determined that the Agency met its burden regarding three other grounds, Sections 2511(a)(2), (5) and (8). Those subsections provide:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> >
> > […]
> >
> > (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
> >
> > […]
> >
> > (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(2), (5), (8).

Both parents challenge the court's determination under Section 2511(a)(2), and thus we review the court's analysis under that statutory ground.

To terminate parental rights under Section 2511(a)(2), the Agency must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal cause the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted).  The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010).  Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

Here, the parents' consolidated cases represent four appeals – *i.e.*, the court terminated both parents' rights as to both Children.  The orphans' court issued respective decrees, which were accompanied by findings of fact and its application of the law.  Although the court analyzed the Children's cases separately, the court's analysis of J.M.H., Jr.'s case was nearly identical to its analysis of M.M.H.'s case, with the exception of a few Child-specific determinations.

As it pertains to Section 2511(a)(2), the orphans' court made the following determinations:

The [orphans' court] finds [the Agency] has proven all three elements [of the Section 2511(a)(2) analysis] by clear and convincing evidence. [The Agency] has demonstrated Mother and Father's incapacity, neglect, and refusal towards [J.M.H., Jr. and M.M.H.] has been repeated and ongoing. The Agency investigated Mother and Father over allegations [that J.M.H., Jr.'s] medical and developmental needs [and M.M.H.'s] developmental needs were neglected four times prior to [their] removal: twice in 2017 and twice in 2019. All four investigations resulted in validated reports.

Mother and Father's incapacity, neglect, and refusal left [J.M.H., Jr. and M.M.H.] without essential care, control, or subsistence necessary for [their] physical and mental well-being. [] At his August 2019 removal, [J.M.H., Jr.] was seven years old, not toilet trained, unable to speak, not enrolled in school and transported in a stroller. The Agency observed the Child in a similar condition in 2017; Mother and Father were offered referrals to agencies and resources such as Justice Works; they did not utilize any of them. The Child has seizures, for which he had not attended necessary medical appointments since 2018. These are basic parental duties necessary for the Child's physical and mental well-being; Mother and Father refused to perform them, despite extensive assistance and direction.

Mother and Father stopped attending [J.M.H., Jr. and M.M.H.'s] medical and therapy appointments in early 2022 despite repeated reminders by CAS and the juvenile court, and despite court-authorized reimbursement for attendance expenses. Further, after two years of specially tailored TIPS, SKILLS, and guided visitations by ABC, Mother and Father still fail to appropriately engage the [Children], provide appropriate boundaries and discipline, or apply/retain learned parenting skills.

Finally, [the Agency] provided clear and convincing evidence that the causes of Mother and Father's incapacity and refusal cannot or will not be remedied. […] The [court] finds [the Agency has] demonstrated Mother and Father fit both descriptions. Mother and Father's IQ scores indicate low cognitive function and intellectual disability; these challenges, combined with their individual learning styles, were accounted for when formulating their parenting plans. Despite those accommodations, Mother and Father struggle

> with the same issues to this day that led to [J.M.H., Jr.'s] removal in 2019.
>
> During their two years with ABC, Mother and Father were not receptive to advice and resisted changing their parenting deficiencies. Father displayed anger at his initial parental assessment evaluation and during the June 2021 SKILLS evaluation. Father has insisted his home was his and he could do as he pleased. Such defiant behavior corroborates the view that there is minimal to no prospect of Mother and Father rectifying their incapacity, neglect, and refusal. FN3
>
>> FN3: No evidence was presented that either parent's resistant behavior had changed/improved.
>
> The [orphans' court] finds the Agency has presented clear and convincing evidence satisfying grounds for termination under Section 2511(a)(2).

Decree regarding J.M.H., Jr., at 14-16 (style adjusted) (citations omitted) (footnoted original); *cf*. Decree regarding M.M.H., at 14-16.

The orphans' court further explained how the parents' incapacity and refusal to parent left M.M.H. without parental care, vis-à-vis J.M.H., Jr.:

> At her August 2019 removal, [M.M.H.] had gone two years without a visit to her pediatrician, suffered from a yeast infection, and needed dental care; these are parental duties essential to [her] well-being.

Decree regarding M.M.H., at 14-15.

In their respective Briefs, the parents make the same arguments. They argue that they substantially complied with the reunification plan. They cite the improved living condition of their home, their participation in the service providers' programming, their attendance regarding visitations and medical appointments. *See generally* Mother's Brief at 10-12; Father's Brief at 11-

14. We find these arguments unavailing. Although the parents highlight their reunification efforts, they did not address the heart of the court's decision – namely, parental incapacity. This incapacity was evidenced by their inability, or refusal, to implement the various services offered to them over the course of three years. In turn, the court concluded that the Children have gone without parental care and that there was no indication that the parents could, or would, remedy such conditions. The record supports these determinations, and thus we discern no abuse of discretion. Mother and Father's first appellate issue is without merit.

Next, the parents challenge the court's credibility determinations. **See generally** Father's Brief at 8-10; Mother's Brief at 6-9. The parents take issue with the testimony of Emilee Bakner, who was the director of the ABC service provider, and Stacy Hosfelt, who was the Agency's third caseworker assigned to the family. The parents argue that these individuals had little, if any, firsthand knowledge of the dependency case. As such, the parents conclude that the "opinions and testimony of [Agency] witnesses should have been afforded little weight as they have little credibility." **See** Father's Brief at 10; Mother's Brief at 9.

We have held that the "trial court is free to believe all, part, or none of the evidence and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **In re Adoption of W.J.R.**, 952 A.2d 680, 684. Our standard of review requires us to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.

*See T.S.M.*, 71 A.3d at 267. We are not in a position to make close calls or reweigh the evidence; rather, deference must be given to the trial court, which often has a longitudinal understanding of the case. *See S.K.L.R.*, 265 A.3d at 1124.

Here, the record was fully developed, and the witnesses were well-informed of the history of the case. Although the Agency's witnesses were not the only individuals who worked with the parents, they were still able to provide comprehensive testimony, which in addition to the Agency's admitted exhibits, constituted sufficient evidence to support the court's decision. The court did not abuse its discretion when it relied on this testimony.[3] The parents' second appellate issue is without merit.

In sum, the orphans' court did not abuse its discretion, nor commit an error of law, when it determined that the Agency met its burden under Section 2511(a)(2). We need not address the other grounds for termination under Section 2511(a)(5) and (a)(8). Given that the parents did not challenge the

---

[3] By contrast, we note for illustrative purposes only, that there have been instances where, at the termination hearing, the local county agency could not produce a witness with a sufficient understanding of the case. *See, e.g., In Interest of S.R.D.*, 2018 WL 4214739 (Pa. Super. 2018) (non-precedential decision). There, the caseworker had taken over the case approximately five months prior to the termination hearing and could not testify about the facts with specificity. The record, which included scant permanency review findings, only compounded this problem. *S.R.D.*, at *12. Given that the record was "utterly devoid of necessary facts," this Court vacated the termination decrees and remanded for further proceedings. *Id.* at 1.

court's findings under Section 2511(b), we need not address the second prong of the court's termination analysis.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/8/2023