J-S26031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.R.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 524 MDA 2024 |

Appeal from the Decree Entered March 19, 2024
In the Court of Common Pleas of York County Orphans' Court at No(s):
2023-0043a

BEFORE:  PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED: SEPTEMBER 13, 2024**

M.R. (Father) appeals the decree issued by the York County Court of Common Pleas, which involuntarily terminated his rights to his two-year-old daughter, C.R.R. (the Child), pursuant to the Adoption Act.  *See* 23 Pa.C.S.A. § 2511(a)(1), (2), (a)(5), (a)(8), (b).  After review, we affirm.[1]

The record provides the following background.  The Child came to the attention of the York County Office of Children, Youth, and Families (CYF) in May 2021 when the Child was born.  Mother had gone into early labor after Father threw her against a wall and put her in a headlock.  At birth, Child tested positive for THC, benzodiazepines, and cocaine.  Hospital staff at the

---

[1] The orphans' court also terminated the rights of M.M. (Mother).  She did not appeal.  The termination proceedings also included the Child's siblings, who have separate fathers.  The particulars of those cases are not before us, although it should be noted that the children reside in the same pre-adoptive foster home (discussed *infra*).

Child's birth thought Father appeared to be under the influence. CYF implemented a safety plan, which required Father's visits with Mother and the Child to be supervised. Mother violated the safety plan by allowing Father to have unsupervised contact, and then lying to the supervisor.

In July 2021, the court adjudicated the Child dependent. The primary concerns included Father's mental health, substance abuse, anger management, and domestic violence. The Child was placed with maternal relatives; the court noted that paternal grandmother could not be a resource given the allegation that she instructed the Child's siblings not to speak about the abuse in the home. In October 2021, the court ordered that a sheriff's deputy must be present during Father's visitation, because Father had allegedly threatened to "smoke" anyone who interfered with his custody. Soon thereafter, Father became incarcerated.

At the December 2021 review hearing, the court learned that Mother had continued to use THC and that she had acted inappropriately at a wedding. Meanwhile, Father reported that he completed batterer's intervention and anger management programs at SCI Greene. Father was released in January 2022. From February 2022 through June 2022, the court heard allegations that Father and Mother had been seeing each other regularly, notwithstanding the existence of a no-contact order and parole conditions prohibiting the same.

Meanwhile, the Child had been placed first with maternal relatives, but then later in the same foster home as her half-siblings. In July 2022, the court returned the Child to Mother's care, but did not close the dependency

case. By November 2022, the court granted Father's request to terminate sheriff supervision. But despite this relief, Father had not visited the Child since July 2022. By December 2022, the Child was placed back in foster care; the Child and her siblings reside in the same pre-adoptive foster home.

At the permanency review hearing in March 2023, the court heard reports that Father had assaulted Mother and vandalized Mother's property. CYF petitioned to change the goal of the dependency proceeding from reunification to adoption, and to terminate Father's rights.

Between March 2023 and December 2023, the Child's dependency case remained status quo. The orphan's court held the termination hearing on December 20, 2023, but because it was determined that the Child and her siblings had divergent interests, the court continued the matter to appoint the children separate attorneys. The court ultimately held the termination hearing on March 15, 2024. Thereafter, the court granted CYF's petition and terminated Father's rights.

Father timely filed this appeal. He presents the following issue for our review:

> Did the orphans' court abuse its discretion and err as a matter of law in finding that CYF met its burden to terminate Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8) and (b)?

Father's Brief at 5 (style adjusted).

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports the trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Int. of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Instantly, the orphans' court terminated Father's rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (a)(5), (a)(8) and (b). As we may affirm under any ground under Section 2511(a), we review the court's decision as to Section 2511(a)(2). That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> […]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to

> be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Moreover, grounds for termination under Section 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citing *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010). On this point, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *Id*.

Instantly, the orphans' court determined that CYF met its burden:

> Father is not fit to [] parent [] the Child. Father was incarcerated for a []considerable portion of the case. His contact with the Child was inconsistent in that he failed to have contact with the Child for periods that lasted for months. At times he was out of communication with [CYF]. He repeatedly violated orders of the court which were put in place to guarantee the safety of the Child. Judge Prendergast felt it necessary to require a deputy sheriff to be present for his visits due to behaviors of his such as threatening to "smoke" anyone who kept him from the custody of the Child. He was verbally abusive from the beginning until the end of the case, as evidenced by Judge Pendergast's July 26, 2021 order and by Father's final words

of invective hurled at the court following the termination of parental rights hearing two years and eight months after Judge Prendergast identified his anger management needs as being significant.[2]

[…]

Father's failure to address his anger management issues that were required to be addressed in his [23 Pa.C.S.A. §] 5329 evaluation were concerning.[3] Father testified that "I completed it in my own way, yeah." Evidently, his way was not entirely successful. Father testified during the termination of parental rights hearing that "if I don't have my child, my child will go to her family. I don't want nobody else to have my child over my dead body." This threat was concerning as Father, as noted by Judge Prendergast on July 16, 2021, had previously been involved in a two-hour standoff with police and had sent pictures [] of him holding a gun in his mouth. He also has a criminal history including a charge for illegally possessing a firearm. He had engaged in repeated acts of domestic violence with Mother before and after significant interventions and incarceration at a state prison.

[…]

Father's contention that [the] conditions which led to the Child's dependency – his anger and abusive behaviors as well as mental health concerns – do not exist is simply incorrect. They do exist, and what is more, they are not likely to be corrected in a timely manner, as demonstrated by the fact that they have persisted for well over two years and were on display in the courtroom at the close of the termination hearing. His denial and resistance to change are abundantly clear.

---

[2] At the end of the hearing, Father cursed at the judge and called her an expletive.

[3] In his evaluation, Father indicated that he "slightly agreed" to the statement: "Wives try to get beaten by their husbands in order to get sympathy from others." *See* O.C.O. at 8; *see also* Exhibit 2.

Orphans' Court Opinion (O.C.O.), 5/2/24, at 15-19 (citations to the record omitted) (style adjusted).

On appeal, Father maintains the only impediment to reunification was his lack of housing, which is not a sufficient basis to terminate a parent's rights. *See* Father's Brief at 23-24 (citing 23 Pa.C.S.A. § 2511(b)). This argument fails for several reasons. First, while it is true that a parent's rights may not be terminated *solely* for environmental reasons such as inadequate housing, the same is not irrelevant to the analysis, as Father suggests. More to the point, Father's inadequate housing was the least of the court's concerns.

As the orphans' court explained in its Rule 1925(a) opinion, Father never addressed his mental health and abusive behaviors. To the extent that he even participated in relevant programing while incarcerated, it is obvious that those programs did not alleviate Father's issues. There is no indication Father could or would remedy the conditions which led to the Child's placement. Thus, we conclude the orphans' court did not err or abuse its discretion when it determined CYF met its burden under Section 2511(a)(2).

Having found no error with the orphans' court's analysis under Section 2511(a), we turn next to the second prong of the bifurcated termination analysis, Section 2511(b). That subsection provides:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

Here, Father argues that severing the parent-child relationship would be harmful to the Child. **See** Father's Brief at 32-33. Father misunderstands the law on this point. To begin, the question under Section 2511(b) is not merely whether a bond exists. As the Supreme Court explained, courts must determine whether the child has a bond with the biological parent, the nature of that bond, and effect that severance of the bond would have on the child. **In the Interest of K.T.**, 296 A.3d 1085, 1109 (Pa. 2023) (citing **T.S.M.**, 71 A.3d at 267, 269). Critically, the question for the court is whether termination would sever a necessary and beneficial bond. **Id.** at 1114.

Put another way, the Court recognized that severance of **any** bond could have an "adverse impact" and upset the child. Therefore, courts must focus on the **nature** of the bond commensurate with the impact of severing that bond:

> Severance of a "necessary and beneficial" bond would predictably cause more than the "adverse" impact that, unfortunately, may occur whenever a bond is present. By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause "extreme emotional consequences" or significant, irreparable harm. Moreover, by evaluating the impact of severance to determine if it will impose more than an adverse or detrimental impact, courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's "feelings" or "affection" for the parent, which even badly abused and neglected children will retain.

**K.T.**, 296 A.3d at 1109-1110 (footnotes and internal citations omitted).

The High Court held that the trial court "must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child." **Id.** As the Court cautioned, the parent-child bond inquiry is but one factor to consider under a proper Section 2511(b) analysis. **Id.** at 1111 (citing **In re N.A.M.**, 33 A.3d 95, 103 (Pa. Super. 2011)). "[B]ond, **plus** permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." **Id.** at 1109 (emphasis added).

Instantly, the orphans' court determined that termination would best serve the Child's needs and welfare, and that there was no bond worth preserving:

> This case has languished long enough since July of 2021. Child deserves stability and permanency. Child's progress with the foster family has been excellent. In the evaluation of the court, there is a direct relationship between her placement in that home along with her sisters and her progress. She has a stable home. She is developing in a healthy way, including progress in speech and sleep habits. She is benefitting from stability. She is safe with her sisters, at long last. This relationship with her sisters, as well as Child's progress once placed with them, weighs heavily in the court's decision.
>
> Father's contention that termination does not serve Child's developmental, physical, and emotional needs is simply incorrect. She would not be able to continue to develop along her current positive trajectory without termination of Father's parental rights. Removing her from that placement would be yet another adverse childhood experience to inflict on Child, and she's experienced far too many, and many were caused by Father, including the violence he

- 10 -

perpetrated on Mother causing her to be born prematurely, inconsistent visits, and now prolonging her ability to find stability, safety, and permanency. Enough is enough. The evidence in this regard is clear and convincing.

O.C.O. at 21.

Upon review, we conclude that the record supports the orphans' court's findings, and we discern no error or abuse of discretion relating to the orphans' court's application of Section 2511(b). In sum, we conclude that the orphans' court properly terminated Father's rights under Section 2511(a)(2) and (b).

Decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/13/2024